USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/11/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

LANCE BARBARINO,

               Petitioner,

v.

THE UNITED STATES OF AMERICA,

               Respondent.

------------------------------------x

10-cr-476 (TPG)
15-cv-8387 (TPG)

**OPINION**

Lance Barbarino ("Petitioner"), proceeding pro se, brings this motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, Petitioner's motion is denied.

## BACKGROUND

### I. Trial and Sentencing

In June 2010, Barbarino was charged with securities fraud, wire fraud, and conspiracy in connection with his decade-long participation in an organized plan to defraud investors—many of whom were elderly individuals—of $12 million. Barbarino pled not guilty and was tried before a jury in March 2013. Barbarino was represented by defense counsel Joel Stein in connection with pretrial and trial proceedings.

The heart of the Government's case was that for a decade, Barbarino conspired with a group of men working for Powercom Energy Services Corp. and Empire Energy Services Corp. (collectively "Powercom/Empire") to defraud

1

innocent investors of millions of dollars. Barbarino and Powercom/Empire employees solicited investments from potential investors and told them that the money would be invested in a particular company, when in fact 40% of the money was paid to Barbarino or a co-conspirator as commission. One company Barbarino solicited investments in was a small Florida-based company called RealCast. Barbarino and his co-conspirators falsely represented to potential investors that RealCast was on the verge of great success. In the course of soliciting investments, Barbarino engaged in deceptive practices, such as distributing misleading documents to investors, misrepresenting the amount of commission to be collected, mischaracterizing which company he worked for, and misleading investors about the potential of their investments. At the trial, the Government repeatedly used the terms "boiler room," "fraudsters," "cronies," and "partners in crime" to describe the scheme. Defense counsel repeatedly objected to the Government's use of the language. Trial Tr. 395, 399, 403, 483.

To prove its case, the Government played recordings of Barbarino and other co-conspirators discussing their roles in seeking investments and their activities in furtherance of the plan to defraud investors. The Government's witnesses included several investors who never received returns on their money. Dr. Frank Moore, an aggrieved investor, traveled from Alaska to testify at trial, and was only available for limited cross-examination before he needed to return home. Dr. Moore was made available for further cross-examination via telephone, but the parties reached an agreement that did not require

2

further cross-examination. Instead, the Government stipulated to the admissibility of a document concerning Dr. Moore's communication with Barbarino, and the defense was satisfied. The Government also called Barbarino's co-defendant, cooperating witness Jamil Fuller, to testify. Fuller worked with Barbarino for many years and his testimony directly implicated Barbarino in the plan to defraud investors. Defense counsel cross-examined Fuller at length.

The defense's key strategy at trial was to portray the statements made to investors by Barbarino and his co-conspirators as genuine and to attempt to demonstrate the viability and potential of RealCast. The defense also highlighted the supporting documentation Barbarino and his co-conspirators sent to investors to demonstrate their candor. The defense called a witness to testify about RealCast's bank records.

Before and during trial, Barbarino suffered illness due to ongoing health issues, including chronic obstructive pulmonary disease. On the third scheduled day of trial, Barbarino collapsed while waiting to enter the courthouse. An alternate juror witnessed Barbarino's collapse and spoke to at least one other juror about the incident. The court questioned the alternate juror as well as another juror who had heard about the incident. The court concluded that the jurors could remain fair and impartial.

The jury convicted Barbarino on all counts. On April 25, 2014, the court sentenced Barbarino to 97 months' imprisonment followed by three years' supervised release based on a loss calculation of $12 million.

## II. Appeal

On appeal to the Second Circuit, Barbarino made two primary arguments. *United States v. Barbarino*, 612 F. App'x 624, 626 (2d Cir. 2015). First, Barbarino argued that he was denied a fair trial by the cumulative effect of several errors he claimed were committed by this court and by the Government before and during his trial, including: (1) this court's denial of his request for a continuance based on his health; (2) this court's management of the situation arising from Barbarino's illness in front of a juror; (3) this court's decision to cut short the cross-examination of Dr. Moore; and (4) the Government's use of improper remarks, such as the terms "boiler room," "fraudsters," "cronies," and "lies." *Id.* at 626–27. Second, Barbarino argued that his sentence was unreasonable because the applicable United States Sentencing Guidelines ("Guidelines") range was calculated using a loss amount of $12 million, which was larger than the loss amount attributed to his co-conspirators. *Id.* at 626.

The Second Circuit affirmed this court's judgment in its entirety, reasoning that many of the alleged errors were "adequately addressed," and that any errors that did occur could "not be said to have deprived [Barbarino] of a fair trial." *Id.* at 627–28. The Second Circuit also found that this court "did not clearly err in determining that the entire $12 million loss was foreseeable to Barbarino, and chargeable to him in its sentencing calculation." *Id* at 628.

### III. Motion to Vacate, Set Aside, or Correct Sentence

Barbarino now moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. In his petition, Barbarino sets forth numerous grounds on which he challenges his conviction and sentence. Those grounds can be summarized as falling into four categories: (1) challenges based on trial errors; (2) a challenge that his sentence was procedurally unreasonable; (3) ineffective assistance of counsel; and (4) a challenge to his sentence based on an amendment to the Guidelines.

Barbarino's challenges based on trial errors cover (1) the Government's use of certain language to describe his criminal conduct and co-conspirators; (2) this court's denial of Barbarino's request for a continuance of trial based on health issues; and (3) this court's decision to limit the cross-examination of Dr. Moore.

In connection with the sentence, Barbarino alleges that this court's adoption of a loss amount of $12 million in calculating the applicable Guidelines range was erroneous because (1) it held him responsible for the loss attributable to the entire conspiracy, and (2) it was higher than the loss amount attributed to his co-conspirators, resulting in the imposition of a longer sentence on Barbarino than his co-conspirators (Petitioner refers to this as "prosecutorial vindictiveness" in his motion). Pet. at 42.

Barbarino also contends that his counsel was ineffective based on counsel's failure to: (1) call exculpatory witnesses at trial, including three witnesses counsel interviewed before trial; (2) adequately prepare for trial by

5

reviewing discovery, including certain recordings; (3) object to the Government's use of certain language; (4) correct a purported mischaracterization of evidence by the Government; (5) insist on additional cross-examination of Dr. Moore; and (6) more vigorously argue for adjournment of the trial due to Barbarino's health issues.

Finally, Barbarino argues that his sentence should be reduced based on a November 1, 2015 amendment to Guidelines Application Note 3(B) to Section 1B1.3, which states "the accountability of the defendant for the acts of others is limited by the scope of his or her agreement to jointly undertake particular criminal activities. Acts of others that were not within the scope of the defendant's agreement, even if those acts were known or reasonably foreseeable to the defendant, are not relevant conduct under subsection (a)(1)(B)." U.S.S.G. § 1B1.3 Applic. Note 3 (2015).

## DISCUSSION

In assessing a petition for habeas corpus, "a district court need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding." *Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009). Where the record "conclusively show[s] that the petitioner is entitled to no relief," summary dismissal without further evidentiary proceedings may be appropriate. 28 U.S.C. § 2255(b); *see also Newfield v. United States*, 565 F.2d 203, 207 (2d Cir. 1977). Because the court has at its disposal the trial transcripts, the relevant

6

sentencing materials, and counsel's submissions to this court, an evidentiary hearing is not necessary.

## I. Claims Already Raised on Appeal

In his § 2255 motion, Barbarino raises many of the same claims he raised on direct appeal to the Second Circuit. It is well accepted that a § 2255 petition is not a substitute for a direct appeal and that a federal prisoner cannot use a § 2255 petition to relitigate claims already raised on direct appeal. *Reese v. United States*, 329 F. App'x 324, 326 (2d Cir. 2009).

To the extent Barbarino's challenges are duplicative of the arguments he raised on direct appeal, they are not a cognizable basis for relief under § 2255. Therefore, the court dismisses Barbarino's challenges based on (1) this court's denial of his request for a continuance based on his health; (2) this court's management of the situation arising from Barbarino's illness in front of a juror; (3) this court's decision to cut short the cross-examination of Dr. Moore; (4) the Government's use of the terms "boiler room," "fraudsters," "cronies," and other similar language; and (5) this court's calculation of the applicable Guidelines range using a loss amount of $12 million.

## II. Ineffective Assistance of Counsel

Petitioner asserts that his defense counsel was ineffective, and he enumerates several alleged failings on the part of his counsel to support his claim. A claim for ineffective assistance of counsel is a permissible basis for a § 2255 motion. *Tavarez v. Larkin*, 814 F.3d 644, 650 (2d Cir. 2016).

To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness (the "performance prong"), and (2) a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different (the "prejudice prong"). *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Failure to meet the required showing of either prong defeats an ineffectiveness claim. *Id.* at 700.

Under the performance prong, "the challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Chrysler v. Guiney*, 806 F.3d 104, 123 (2d Cir. 2015) (internal quotations omitted). Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" because "[t]here are countless ways to provide effective assistance in any given case." *Id.* at 689.

Coming to the specifics of this case, counsel did not render ineffective assistance in deciding not to call certain witnesses identified by Petitioner. The decision "whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987). This decision about the witnesses falls squarely within the ambit of trial strategy, and does not constitute a basis for ineffective assistance of counsel. *Id.* Strategic choices made by counsel "after thorough investigation

8

of law and facts relevant to plausible options" are "virtually unchallengeable." *Id.* at 690–91.

Here, Counsel interviewed the witnesses Petitioner requested, which surely indicated that the decision not to call the witnesses was a deliberate strategic choice. *See Barnes v. United* States, Nos. 13 Civ. 9105, 04 Crim. 186, 2015 WL 585430, at *7 (S.D.N.Y. Aug. 31, 2015) (That "counsel contacted [the potential witness] and investigated his account of that day suggests that the alleged 'failure' to call him as a witness was in fact a deliberate strategic decision."). And counsel's strategy not to call the witnesses was reasonable. Petitioner's assertions that these witnesses would have spoken to "their feelings about the company as well as the esteem they held the defendant, the well regard for his work ethic, integrity and honesty," Pet. Ex. A at 24, do not call into question counsel's decision. The legitimacy of the Powercom/Empire and Bararino's credibility were effectively challenged at trial, so counsel could have reasonably determined that the added value of presenting the witnesses would have been negligible.

Counsel's decision not to continue cross-examining Dr. Moore also fell within the range of reasonable strategic decisions. "Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature." *Nersesian*, 824 F.2d at 1321. Counsel may very well have believed that further probing of Dr. Moore was unnecessary, especially in light of the Government's stipulation to the admissibility of the document concerning Dr. Moore's communications with Barbarino.

9

Next, Petitioner claims counsel's failure to "correct crucial mistakes during prosecution's summary" amounted to ineffective assistance. Pet. Ex. B at 4. Initially, this claim fails because Petitioner does not clearly identify what mistakes counsel failed to correct. Rather, Petitioner argues that counsel should generally have painted a more sympathetic image of Petitioner to the jury during trial. This argument is not based on a specific identifiable error, but amounts to a challenge to counsel's general approach to trial. Counsel's strategy at trial, which was to undermine the Government's theory that the statements and transactions made by Petitioner were fraudulent, was reasonable. Furthermore, to the extent counsel decided not to object to the Government's characterization of certain evidence, that decision could well have reflected counsel's fear that doing so would have highlighted the evidence for the jury. *See Quinones v. Miller*, 224 F. App'x 44, 49 (2d Cir. 2007).

In any event, Petitioner's claim that counsel failed to object during trial is not supported by the facts. The record shows that counsel objected to the Government's use of the language Barbarino cites. The court sustained some of the objections and overruled others. *Compare* Tr. at 395 *with* Tr. at 483. Petitioner has not identified any specific occasion on which counsel did not object. Thus, Petitioner's allegation that counsel's lack of objections constituted ineffective assistance of counsel fails.

As for counsel's failure to seek additional continuances of trial due to Barbarino's health, the court finds that counsel's decision was objectively reasonable. Counsel sought to adjourn the trial at a pretrial conference on

February 25, 2013 due to Barbarino's health, and that request was denied. Counsel was not then required to engage in the filing of futile duplicative motions for the same relief. *See, e.g., Nersesian*, 824 F.2d at 1322. Counsel kept the court apprised of Barbarino's health concerns throughout trial and advocated on Barbarino's behalf to ensure he could attend doctor's appointments and recover from a hospital admission. Tr. at 193, 213–15. Counsel's efforts were eminently reasonable.

Petitioner also contends that counsel inadequately prepared for trial because he did not sufficiently review discovery materials or have certain recordings transcribed. With respect to the recordings, Petitioner advances no argument as to why the recordings needed to be transcribed, why the recordings were independently insufficient, or why counsel's failure to transcribe the tapes fell below an objective standard of reasonableness. "Allegations relating to counsel's alleged errors in trial preparation and advocacy that are vague, conclusory and unsupported . . . are insufficient to establish an ineffective assistance of counsel claim." *Barnes*, 2015 WL 585430, at *7. Petitioner's claim falls far short of establishing that the failure to transcribe the recordings amounted to ineffective assistance of counsel. The record also plainly contradicts Petitioner's claim that counsel failed to review the discovery prior to trial. The trial transcript demonstrates that counsel had a thorough knowledge of the materials in the case, including the recordings, financial records, bank statements, and subscription agreements. Tr. at 18–22, 108, 157–159, 307–15, 371–91, 448–451.

On the whole, the record indicates that counsel's preparation and performance at trial was well within the "wide range of reasonable professional assistance." *Strickland*, 446 U.S. at 689. For example, counsel did seek an adjournment of trial to account for Barbarino's health issues. Counsel objected to the Government's use of the language Barbarino cites, thoroughly cross-examined the Government's key witnesses, and called a witness to testify about RealCast's bank records. On the whole, counsel's performance did not fall below an objective standard of reasonableness.

Even assuming, contrary to the court's view, that counsel failed to adequately investigate and prepare a defense or made errors at trial, Petitioner fails to satisfy the prejudice prong of the *Strickland* test. As the Second Circuit determined, the Government's use of the language Petitioner identifies "did not rise to the level of prejudicial error," and Petitioner suffered no harm from the shortened cross-examination of Dr. Moore. *Barbarino*, 612 F. App'x at 626–27. Therefore, Petitioner did not suffer prejudice from counsel's decisions relating to either the Government's use of certain language identified by Petitioner or the cross-examination of Dr. Moore. Moreover, there was "overwhelming evidence of Barbarino's guilt" at trial. *Id.* at 627. Under these circumstances, the court cannot conclude that Barbarino was prejudiced by the errors purportedly committed by trial counsel.

### III. Challenge Pursuant to Section 3582(c)

In his § 2255 petition, Petitioner challenges his sentence on the ground that the Guidelines were amended after his sentencing and that the

amendment would result in a reduction in his sentence. Such claims are properly raised in a motion for resentencing under 18 U.S.C. § 3582(c). Because Petitioner is proceeding pro se in the current action, the court liberally interprets his request for relief based on the amendment to the Guidelines as a motion for resentencing pursuant to § 3582(c). *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) ("It is well settled that pro se litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest.") (internal quotations omitted).

Under § 3582(c)(2), a court may reduce a petitioner's term of imprisonment to reflect "the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (d) had been in effect at the time the defendant was sentenced." U.S.S.G. § 1B1.10(b). Thus, a petitioner seeking to reduce his sentence must show that the amendment to the Guidelines he relies upon is listed in § 1B1.10(d).

In assessing a petitioner's request, the court must first "determin[e] the amended guideline range that would have been applicable to the defendant had the relevant amendment been in effect at the time of the initial sentencing." *Dillon v. United States*, 560 U.S. 817, 827 (2010). If the amendment would not "have the effect of lowering the defendant's applicable guideline range," the defendant is not eligible for a sentencing reduction. 18 U.S.C. § 3582(c)(2).

Second, the court must decide whether the "particular circumstances of the case" justify a reduction. *Dillon*, 560 U.S. at 827.

The amendment Barbarino relies upon is Application Note 3 to § 1B1.3. Application Note 3 to § 1B1.3 is not listed in § 1B1.10(d), so Barbarino has not identified an amendment to the Guidelines that would make him eligible for a reduction in his sentence pursuant to § 3582(c). Barbarino's petition for resentencing is therefore denied.

## CONCLUSION

For the reasons stated above, the motion to correct, vacate, or set aside his sentence pursuant to 28 U.S.C. § 2255 and the request for resentencing pursuant to 18 U.S.C. § 3582(c) are denied. The Clerk of Court is directed to close the motion pending at Docket Number 297 in 10 Crim. 476 and to mark the corresponding civil action (No. 15 Civ. 8583) closed. Because Barbarino has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–13 (2d Cir. 2000). Pursuant to 28 U.S.C. § 1915(a)(3), the court certifies that any appeal from this Order would not be taken in good faith. *See Coppedege v. United States*, 369 U.S. 438, 445–46 (1962).

SO ORDERED

Dated: New York, New York
April 11, 2017

Thomas P. Griesa
U.S. District Judge

14